Judge Brooke
has since furnished the reporter with an opinion stating his reasons for such dissent, as follows :
Judge Brooke. My opinion in this case will he tittle more than a commentary on the one 1 delivered in the same ease, when it. was before this Court, in the *240 form of an action of ejectment. In tliat action, the material facts in this were all before the Court. Noroell the appellant was then in possession of the land in con^roversy, and claimed under the patent on which he now relies; the judgment of the inferior Court was against and he appealed to this Court, where, after long and deliberate consideration, aided by a very elaborate and able argument on both sides, it was affirmed, and the appellant turned out of possession,, Upon a correct view of the facts in that case, it is impossible to mistake the grounds of the decision. If the Patent to Norvell availed any thing, the Court would have found nothing in the 26 years’ possession of his adversaries, and of those under whom they claimed, on which, even in an action of ejectment, to found the judgment then pronounced; for if the right to grant the land as waste and unappropriated was in the Commonwealth at the date of the Patent to Norvell, the maxim nulhim tempus applied as to the Commonwealth in its full force, and the right of Norvell to the possession under the Patent must have overcome the pretensions of the lessors of the. Plaintiff. In other words, if the title to the land, as waste and unappropriated, was in the Commonwealth until the date of the Patent to Norvell, the anterior possession of the plaintiff in ejectment, being much less than twenty years, gave no right to the possession against Norvell, who claimed under the Commonwealth. To have considered the Patent valid, that is, a grant of the land in question, as waste and unappropriated, by the Commonwealth, and then to have, pronounced judgment against him on the ground of the naked possession of the plaintiff, of land of that character, would have been impossible. The Court then, as a preliminary to an enquiry into the title of the Plaintiffs, must have considered that no title passed, by the Patent to Norvell, to the land in question, on the ground that it was not waste and unappropriated, and therefore not comprehended by the Patent, which, vcciting the treasury warrant on which it was founded, could convey land of no other description in pursuance of the Act of 1779. That this was the opinion of the *241 Court, necessarily results from what was said on the title of the Plaintiffs; and, if I am correct in this, an opinion of the Court in the present case that would reverse the grounds of it’s former opinion, in a case between the same parties, and depending on the same facts, will be a novelty of which we have no example.
But, upon the merits, the former decision of this Court was correct. The plaintiffs in ejectment, and the appellees now before the Court, held an estate upon condition, under the judgment of the General Court, founded on the petition of those under whom they claim. The legal title was revested in the Crown by that judgment, to he transmitted to them upon the performance of the conditions therein mentioned. On the failure to perforin the conditions, no forfeiture could be pronounced in behalf of the Commonwealth (on which the rights of the Crown have devolved) except by the General Court or some other tribunal substituted by law. (a) The right to a grant under that judgment, is not limited as to time by the Act of 1748, in pursuance of which it was rendered. Upon principle, a forfeiture could not, by the register of the land office, and the Governor who executed the Patent to Mr veil, be pronounced; and, if it could, land before patented and forfeited would not be converted into waste and unappropriated land, to be located upon a treasury warrant under the Act of 1779, if the Act of 1748 has expired, as was insisted on. The right of the Commonwealth ought to have been judicially asserted. The error is in supposing a case of this description analogous to the cases arising out of claims to waste and unappropriated lands under the Act of 1779. The right to a grant for any specific land of the last description, in preference to another claiming the same right, could only be decided in a Court of Caveat, (under the authority of Johnson and Brown, and Noland v. Cromwell in this Court,) until such land was granted to some one, as the land in question had been to the Christians. The right to appropriate it in exclusion of another claiming' that right, gave no equity against the Commonwealth. There being no contract express or implied on which to bottom *242 an equity, it gave no equity ex-contractu against another claiming the same right. The Act of 1779 only holding out the right to any citizen to appropriate waste and unappropriated land, on the terms of that Act, wit!)out a compliance -with which no right accrued; if the party to consummate his right by not pursuing the provisions of that Act, and another more diligent obtained a grant, he had no claim upon the Commonwealth, except to another warrant with which he might take other .lands: it gave no equity to any one, in preference to another. Until the claim to appropriate had been carried into a grant, the land did not take the character of property; and all controversies, between parties claiming the right to appropriate such land under the Act, were to he tried in the Court of Caveat. On these principles, the cases referred to were decided, which cases only permit such parties to come into a Court of Equity on the ground that they had been kept out of the Court of Caveat hy fraud, accident, or mistake. If they had any general equity ex-contractu either against the Commonwealth or a party contesting the right, these decisions could not be supported, because the remedy would have been considered as cumulative. The case now before the Court differs then from those cases in this, that the land in question had. been, before the grant to Norvell, appropriated by a grant to the Christians. The declaration in the Act of 1748, that, upon the failure of the party to perform the condition of settling, &c. after the Patent had issued, did not convert the land into waste and unappropriated laud: it had been appropriated hy the grant, and the Act of 1748 gave the title back to the Crown upon failure to perform the conditions required hy it, to be adjudged in the General Court, upon the petition of some other person for the land lapsed. Before such adjudication in the General Court, or some other pointed out by law, no forfeiture could accrue, nor could the title revest in the Crown, nor in the Commonwealth, since the rights of the former devolved upon the lattci*. Indeed, under the 36th section of the Act of 1748, unless the petition was within ten years from the date of the *243 Patent, the title was confirmed to the Patentee, as if he had performed all the conditions:.—the land could never lapse. The right of the appellees is now to a grant from the Commonwealth, not for waste and unappropriated laud, but for land once the property of the Christians, and adjudged to the petitioners, under whom they claim, by the judgment of the General Court. For all that appears in this case, the conditions on which the appellees have a right to a Patent from the Commonwealth, may have been performed,* and yet that right is to be divested by the officers of the Commonwealth authorised to issue patents, if the Court decides that the Patent to Norvell is conclusive evidence that the land in question was waste, Ac. when that Patent issued. As to the ground that a Court of law cannot declare void a Patent for any thing not apparent on the face of it, that objection does not occur in this case. On t’sie face of the Patent, it is for waste and unappropriated laud: it was Issued by virtue of a treasury warrant, on which no other description of land could bo located according to the acts on the subject. The first enquiry is, does the Patent pass the commonwealth’s title to the land in question? In every case, before a party can recover by virtue of a grant, the land claimed must be shown to be the land granted. If no land can be found as described in the Patent, it passes nothing. If, upon the face of the Patent, (as in the present case,) the land demanded by the party is not the land intended to be conveyed by the commonwealth under the law of the commonwealth, whatever may be his rights under it, they, do not attach upon the land in question. In coming to that conclusion, it is not necessary to vacate the Patent: it is only necessary to decide that the land in controversy, having been before granted by the Crown, is not waste and unappropriated land, within the meaning of the treasury warrant, in virtue of which it was entered and located, as is recited in the Patent itself. This result is arrived at without going out of the Patent to ascertain the rights of the Patentee in relation to the common wealth, but is dcduciblc from the bids in the special verdict in relation, to the *244 title of the appellees, opposed to the facts disclosed by the Patent itself. The question, whether the common* wealth has a right to grant the land of any citizen, ought not to be concluded by the Patent in a trial at law, on which it appears that the right to grant was not in the coroinomvealth under the law in pursuance of which the grant is professed to have been made.—That Courts of Equity are more competent to investigate the merits of a claim to a grant, in behalf of the grantee, in a controversy with the commonwealth, in which at law the grantee might insist that the latter was estopped by it’s deed, I have no doubt; but, in a controversy with a party claiming to hold the land under the law of the cqmmonwealth, in preference to another, who, under his Patent upon the face- of it, has no title'to land before patented, I conceive the question of estoppel docs not arise. A Patent for waste and unappropriated land cannot conclude a party, holding land of a different description, to shew' that fact, any where. In the case of waste and unappropriated land, a failure to perform what was required by the act of 1779 before a Patent issued, could not be considered as a forfeiture, but an abandonment of the claim to appropriate the land entered; and the right of the commonwealth to grant the land to another, who had complied with the terms of the Act of 1779, accrued.
But the right of the Commonwealth to grant land before granted, on the ground of a forfeiture, as in the present case, could not accrue until that right was judicially ascertained. Under the act of 1748, in relation to lapsed lands before patented, no right was reserved to the Crown to claim as for forfeiture, on the nonperformance of the conditions prescribed by the judgment of the G eneral Court, as in this case. It’s only security, under ■that act, for the performance of the conditions on the-part of the petitioners, was that, in the event that the conditions were not performed, some other person would again petition to have a grant for it on the same terms, and would Caveat the person claiming a grant, on the ground that he had not performed the conditions prescribed by the judgment of the General Court. This *245 security devolved on the Commonwealth; and it had the .right to grant the land on no other terms under the act of xr48. Under that act., the appellees have a claim of higher grade than a claim to waste and unappropriated land, which might, as before said, he abandoned at any time. As well might it be said, that a patent would at law pass escheated land, though, upon the, face of it, it was issued upon a treasury warrant, for waste and unappropriated land, in direct contravention of the act which prescribes the mode of acquiring title to such land from the Commonwealth. Under such a construction, the Commonwealth, in consequence of the mistakes of its officers in issuing such patent, would be compelled to resort to a Court to avoid its own patent, or lose land never intended by the law to be granted, and of ten limes the value of waste and unappropriated land, which it intended to grant. Upon the whole, 1 am of opinion the judgment of the Superior Court ought to be affirmed.

 See the Act of 1748.